IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEITH LAVERPOOL,

        Plaintiff,

v.

TAYLOR, BEAN & WHITAKER
MORTGAGE CORPORATION,
ROUNDPOINT MORTGAGE
SERVICING CORPORATION, and
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

        Defendants.

1:15-cv-566-WSD

**OPINION AND ORDER**

This matter is before the Court on Taylor, Bean & Whitaker Mortgage Corporation's ("TBW"), RoundPoint Mortgage Service Corporation's ("Roundpoint"), and Mortgage Electronic Registration Systems, Inc.'s ("MERS") (collectively, "Defendants") Motion to Dismiss [3] Plaintiff Keith Laverpool's ("Plaintiff") Complaint [2.2]. Also before the Court is Plaintiff's "Motion to Stay Proceedings Pending State Court Filing and Consumer Financial Protection Bureau Investigation" ("Motion to Stay") [7].

**I.    BACKGROUND**

Plaintiff has a lengthy history of challenging the validity of his mortgage

debt and seeking to delay foreclosure on, and dispossession from his home, following his default on his loan obligations.[1]

On June 29, 2007, Plaintiff obtained a loan in the amount of $177,219.00 from TBW.  Repayment of the loan was secured by a deed ("Security Deed") to real property located at 1580 Smithson Court, Lithonia, Georgia (the "Property"). (Security Deed [2.3] at 2).  Plaintiff executed the Security Deed in favor of MERS, as nominee for TBW and TBW's successors and assigns.  Under the terms of the Security Deed, Plaintiff "grant[ed] and convey[ed] to MERS (solely as nominee

---

[1]  Plaintiff has filed at least four bankruptcy cases in the Northern District of Georgia since obtaining his mortgage: (i) No. 13-61963, filed June 1, 2013, and dismissed June 13, 2013, for failure to pay the filing fee; (ii) No. 13-73766, filed November 1, 2013, and dismissed on January 16, 2014, for failure to pay the filing fee; (iii) No. 14-56989, filed April 5, 2014, and dismissed July 14, 2014, for failure to comply with the court's order; and (iv) No. 14-68254, filed September 17, 2014, and dismissed December 31, 2014, for failure to file required financial information and failure to attend the meeting of creditors.  In Plaintiff's most recent bankruptcy action, on November 25, 2014, the United States Bankruptcy Court for the Northern District of Georgia granted RoundPoint relief from the automatic stay provisions of the Bankruptcy Code to foreclose on Plaintiff's home.  See See Order granting RoundPoint Relief from Stay, In re Laverpool, No. 14-68254, Doc. 23 (Bankr. N.D. Ga. Nov. 25, 2014) (detailing Plaintiff's pattern of filing bankruptcy petitions to avoid scheduled foreclosure sales).

On December 3, 2014, Plaintiff also filed a complaint in the Superior Court of DeKalb County, seeking quiet title to the Property based on similar theories that he raises in this action.  On January 9, 2015, Defendants removed the DeKalb County Action to this Court.  Plaintiff voluntarily dismissed the action on January 16, 2015. See Laverpool v. Taylor, Bean & Whittaker Mortg. Corp., No. 1:15-cv-078 (N.D. Ga. Jan. 16, 2015).

for [TBW] and [TBW's] successors and assigns), and the successors and assigns of MERS, with power of sale, the [Property]." (Security Deed at 1-2).

On September 23, 2009, RoundPoint became the servicer of Plaintiff's loan. ([7.1] at 9).

On August 2, 2011, MERS, as nominee for TBW, assigned the Security Deed to TBW (the "Assignment"). (Assignment [2.3] at 12).

At some point, Plaintiff defaulted on his loan obligations. On December 29, 2014, Rubin Lublin, LLC, on behalf of TBW, sent Plaintiff a letter indicating that Plaintiff had defaulted on his loan obligations and that a foreclosure sale of the Property was scheduled for February 3, 2015. (Compl. ¶ 13).

On January 8, 15, 22, and 29, 2015, TBW published a Notice of Sale Under Power ("NSUP"), which states:

> By virtue of a Power of Sale contained in [the Security Deed] from Keith Laverpool to [MERS] as nominee for [TBW]. . . . said Security Deed having been last sold, assigned and transferred to [TBW], . . . [The Property will be sold at] public outcry to the highest bidder for cash . . . on the first Tuesday in February, 2015. . .
>
> The entity having the full authority to negotiate, amend or modify all terms of the loan . . . is: ROUNDPOINT MORTGAGE SERVICING CORPORATION.

(NSUP [2.3 at 17]).

3

On January 9, 2015, at the earliest, Plaintiff applied for a loan modification with RoundPoint.  ([2.3] at 18-20).[2]

On January 26, 2015, Plaintiff filed his Complaint in the Superior Court of DeKalb County, Georgia, asserting claims for attempted wrongful foreclosure (Count One) and injunctive relief (Count Two).  Plaintiff appears to assert that Defendants lack standing to foreclose on the Property based on perceived defects in the Assignment because his application for a loan modification is still pending.  Plaintiff seeks injunctive relief, compensatory and punitive damages, attorney's fees and litigation costs.  On February 3, 2015, after Plaintiff initiated this action, the Property was sold, at a foreclosure sale, to TBW ([7.1] at 12).

On February 23, 2015, TBW initiated a separate action in the Superior Court of DeKalb County to confirm and approve the February 3, 2015, foreclosure sale (the "Confirmation Action").  See Taylor Bean & Whitaker Mortg. Corp. v. Laverpool, No. 15cv2569-3  ([7.1] at 10-14).

---

[2]   Plaintiff attached to his Complaint a "Uniform Borrower Assistance Form" and a "Dodd-Frank Certification," signed by Plaintiff and dated January 9, 2015; a January 18, 2015, email from Plaintiff to RoundPoint in which Plaintiff states that he "sent all of the required documents and [is] looking forward to receiving a fair loan modification;" a second January 18, 2015, email from Plaintiff to RoundPoint which states only "more documents;" and a January 20, 2015, email from Roundpoint to Plaintiff stating that RoundPoint "received the paperwork [Plaintiff] sent in and it has been sent to [their] loss mitigation inbox for set up."  ([2.3] at 18-20; [2.4] at 17; [2.5] at 1-4).

On February 26, 2015, Defendants removed the DeKalb County Action to this Court based on diversity of citizenship [1].

On March 5, 2015, Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim.

On September 18, 2015, Plaintiff filed his Motion to Stay.  Plaintiff claims that the Consumer Financial Protection Bureau Investigation ("CFPB") is "investigating certain [m]ortgage procedures surrounding the foreclosure of his home by TBW and RoundPoint Mortgage."  ([7] at 2).  Plaintiff requests that this action be stayed pending the "outcome of the CFPB Investigation" and resolution of the Confirmation Action.  (Id.).

## II.   DISCUSSION

### A.   Legal Standard

Dismissal of a complaint, pursuant to Rule 12(b)(6), is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ.,

495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  The Court is not required to accept a plaintiff's legal conclusions as true.  See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., — U.S. —, 132 S. Ct. 1702 (2012).  The Court also will not "accept as true a legal conclusion couched as a factual allegation."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint, ultimately, is required to contain "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.[3]

To state a plausible claim for relief, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (citing

---

[3]  The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Twombly, 550 U.S. at 577 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The Court decided that "this famous observation has earned its retirement."  Id. at 563.

6

Twombly, 550 U.S. at 557); see also Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 680 (11th Cir. 2014) (noting that Conley's "no set of facts" standard has been overruled by Twombly, and a complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). "A complaint is insufficient if it 'tenders naked assertions devoid of further factual enhancement.'" Tropic Ocean Airways, Inc. v. Floyd, 598 F. App'x 608, 609 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004); see also White v. Bank of America, NA, 597 F. App'x 1015, 1017 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).[4]

B. <u>Analysis</u>

---

[4] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

1.    Wrongful Foreclosure (Count One)[5]

To state a claim for wrongful foreclosure under Georgia law, a plaintiff must show "a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and

---

[5]    Wrongful foreclosure and attempted wrongful foreclosure are two different causes of action under Georgia law.  Compare All Fleet, 634 S.E.2d at 807 (To state a claim for wrongful foreclosure, plaintiff must show a "legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages") with Jenkins v. McCalla Raymer, LLC, 492 F. App'x 968, 972 (11th Cir. 2012) (To state a claim for attempted wrongful foreclosure, plaintiff must show "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication.").

Although titled "*Attempted* Wrongful Foreclosure" in his Complaint, it appears that Plaintiff intended to assert a claim for wrongful foreclosure to enjoin the foreclosure sale and challenge Defendants' authority to foreclose.  See Jenkins, 492 F. App'x at 971-72 (plaintiff may maintain cause of action for wrongful foreclosure where plaintiff seeks to enjoin actual foreclosure sale from being completed, rather than only seeking damages; but plaintiff seeking damages must show property was actually sold at foreclosure) (citing Morgan v. Ocwen Loan Serv., LLC, 796 F. Supp. 2d 1370, 1377 (N.D. Ga. 2011)).

To the extent he intended to assert a claim for attempted wrongful foreclosure, Plaintiff does not identify the purported "untrue and derogatory information concerning [his] financial condition" Plaintiff alleges that Defendants published.  Plaintiff thus fails to allege facts sufficient to support a claim for attempted wrongful foreclosure.  See id.; see also Peterson v. Merscorp Holdings, Inc., No. 1:12-cv-00014-JEC, 2012 WL 3961211, at *5 (N.D. Ga. Sept. 10, 2012) (plaintiffs failed to state a claim for attempted wrongful foreclosure where they alleged only that defendant misrepresented itself as the secured creditor on foreclosure notice).

damages." All Fleet Refinishing, Inc. v. W. Georgia Nat'l Bank, 634 S.E.2d 802, 807 (Ga. Ct. App. 2006).

Here, Plaintiff argues that Defendants lack authority to foreclose on the Property. It is undisputed that Plaintiff executed the Security Deed and granted to MERS, as nominee for TBW and TBW's successors and assigns, title to the Property, with the power of sale. (Security Deed at 1-2). On August 2, 2011, MERS assigned its rights under the Security Deed to TBW. (Assignment at 1). TBW is thus entitled to exercise the power of sale in the Security Deed.[6]

To the extent Plaintiff argues that Defendants lack standing to foreclose on the Property because they do not hold Plaintiff's promissory note and Security Deed and are not his "secured creditor," the Supreme Court of Georgia has expressly rejected this argument and held that "the holder of a deed to secure debt

---

[6] To the extent Plaintiff argues that the Assignment is defective or fraudulent, Plaintiff is not a party to the Assignment and he therefore lacks standing to challenge its validity. See Montgomery v. Bank of Am., 740 S.E.2d 434, 436 (Ga. Ct. App. 2013) (because assignment of security deed was contractual, plaintiff lacked standing to contest its validity because he was not a party to the assignment) (citing O.C.G.A. § 9-2-20(a), which provides that an action based on a contract can be brought only by a party to the contract); Edward v. BAC Home Loans Serv., L.P., No. 12-15487, 2013 WL 4400102, at *2 (11th Cir. Aug. 16, 2013) (citing Montgomery). Even if he did have standing to challenge the Assignment, Plaintiff's conclusory assertion that the Assignment is not valid because the former chairman of TBW was convicted of fraud and "the U.S. Department of Justice ordered [TBW] Cease and Desist [sic] from ALL mortgage activity," is not sufficient to support a claim for relief.

9

is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed." You v. JP Morgan Chase Bank, 743 S.E.2d 428, 431-433 (Ga. 2013); see also O.C.G.A. § 23-2-114 ("[u]nless the instrument creating the power specifically provides to the contrary, a . . . successor of the grantee in a mortgage, deed of trust, deed to secure debt, bill of sale to secure debt, or other like instrument, or an assignee thereof, or his personal representative, heir, heirs, legatee, devisee, or successor may exercise any power therein contained."). The Court notes further that TBW was Plaintiff's original lender, and there is no evidence to support that an entity other than TBW ever held Plaintiff's note. Thus, at the time Plaintiff received the December 29, 2014, Notice of Foreclosure, and on February 3, 2015, when TBW actually foreclosed on the Property, TBW held both Plaintiff's note and the Security Deed.

Plaintiff next argues that foreclosure is wrongful because he submitted loan modification paperwork and a "loss mitigation application," and, "[u]nder the Consumer Financial Protection Bureau . . . a mortgage servicer cannot start the foreclosure process if a loss mitigation application is pending." (Compl. ¶¶ 18-22

& Exs. D, E).[7] Plaintiff appears to base his claim on 12 C.F.R. § 1024.41(g), which provides:

> If a borrower submits a complete loss mitigation application after [foreclosure proceedings are first initiated,] *but more than 37 days before a foreclosure sale*, a servicer shall not . . . conduct a foreclosure sale, unless:
>
> (1) The servicer [informs] the borrower that [he or she] is not eligible for any loss mitigation option . . . ;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g) (emphasis added).[8] "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a).

Here, the foreclosure sale was scheduled for, and conducted on, February 3, 2015. For Section 1024.41 to apply, Plaintiff was required to submit a complete loss mitigation application more than 37 days before the February 3,

---

[7]   12 C.F.R. § 1024.41 was enacted by the Consumer Financial Protection Bureau, which was established by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

[8]   It appears that Plaintiff defaulted on his loan payments in January 2009, and Defendants first initiated foreclosure proceedings in 2013. See In re Laverpool, No. 14-68254, Doc. 23 (detailing Plaintiff's pattern of filing bankruptcy petitions to avoid scheduled foreclosure sales).

2015, foreclosure sale—that is, Plaintiff was required to submit a complete loss mitigation application on or before December 28, 2014. The documents Plaintiff attached to his Complaint show that Plaintiff submitted a loss mitigation application, at the earliest, on January 9, 2015—just thirty-two (32) days before the February 3, 2015, foreclosure sale. (See Compl. at Ex. E, [2.5] at 1-4). To the extent noncompliance with Section 1024.41 could support a claim for wrongful foreclosure,[9] Section 1024.41 simply does not apply here. See 12 C.F.R. § 1024.41(g); See Obazee v. Bank of New York Mellon, No. 3:15-cv-1082-D, 2015 WL 4602971, at *2-3 (N.D. Tex. July 31, 2015); Deming-Anderson v. PNC Mortg., No. 15-cv-11688, 2015 WL 4724805, at *4 (E.D. Mich. Aug. 10, 2015) (dismissing plaintiff's claims against loan servicer for fraud based on violations of Section 1024.41, including because loan servicer "was under no obligation to review application, given that it was submitted fewer than thirty-seven days before scheduled foreclosure sale).

Finally, Plaintiff does not allege, and it does not appear, that he is current on his loan obligations. Failure to make the proper loan payments or tender the amount due defeats any claim for wrongful foreclosure. See, e.g., Harvey

---

[9] 12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of [Section 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

v. Deutsche Bank Nat'l Trust Co., No. 1:12-cv-1612, 2012 WL 3516477, at *2 (N.D. Ga. Aug. 14, 2012) ("When the borrower cannot show that the alleged injury is attributable to the lender's acts or omissions, the borrower has no claim for wrongful foreclosure."); Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E. 2d 842 (Ga. Ct. App. 2004) (plaintiff's injury was "solely attributable to its own acts or omissions both before and after the foreclosure" because it defaulted on the loan payments, failed to cure the default, and did not bid on the property at the foreclosure sale); cf. Austin v. Bank of Am., N.A., No. 1:11–CV–3346–RWS, 2012 WL 928732, at *1 (N.D .Ga. Mar. 16, 2012) (dismissing claim for wrongful attempted foreclosure where plaintiffs admitted they were in default and did not allege that defamatory statements were published against them); Sellers v. Bank of Am., Nat'l Ass'n, No. 1:11-cv-3955-RWS, 2012 WL 1853005, at *3 (N.D. Ga. May 21, 2012) (dismissing attempted wrongful foreclosure claim; while plaintiffs alleged that defendants lacked authority to foreclose, plaintiffs failed to allege sufficient facts to show that they suffered any damage as a result).  Plaintiff's claim for wrongful foreclosure is required to be dismissed for this additional reason.

    2.    <u>Injunctive Relief (Count Two)</u>

A claim for preliminary injunctive relief requires a showing of "a substantial likelihood of success on the merits of the underlying case," Grizzle

v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011), while a permanent injunction requires actual success on the merits, United States v. Endotec, Inc., 563 F.3d 1187, 1194 (11th Cir. 2009).  Because Plaintiff fails to state a viable claim for relief, his claim for injunctive relief is required to be dismissed.[10]

## III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Taylor, Bean & Whitaker Mortgage Corporation's, RoundPoint Mortgage Service Corporation's, and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss [3] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Keith Laverpool's Motion to Stay [7] is **DENIED AS MOOT**.

**SO ORDERED** this 7th day of December, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[10] Having determined that Plaintiff's Complaint fail to state a viable claim for relief, and because the Court grants Defendants' Motion to Dismiss, Plaintiff's Motion to Stay is denied as moot.